UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| TAMARA L. HARDY-RETZLOFF,<br><br>    Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>    Respondent. | Case No.: 4:14-cv-00201-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before this Court is Petitioner Tamara L. Hardy-Retzloff's Complaint and Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny her "application for Social Security Disability and Supplemental Security Income Disability benefits for lack of disability." Pet. for Review, p. 1 (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On or around December 16, 2010, Tamara L. Hardy-Retzloff ("Petitioner") applied for Supplemental Security Income, alleging disability beginning September 1, 2010. This claim was initially denied on March 10, 2011 and, again, on reconsideration on May 11, 2011. On May 16, 2011, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On November 26, 2012, ALJ Mason D. Harrell, Jr. held a video hearing in San Bernardino, California, at which time, Petitioner (then represented by attorney Matthew Nielson) appeared

**MEMORANDUM DECISION AND ORDER - 1**

(in Pocatello, Idaho) and testified.  Impartial vocational expert, David A. Rinehart, also appeared and testified during the same November 26, 2012 hearing.

On December 5, 2012, the ALJ issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council on February 1, 2013.  On March 20, 2014, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely files the instant action, arguing that "the Commissioner's decision contains errors of law and is not based on substantial evidence as required by 42 U.S.C. § 405(g)."  Brief in Supp. of Pet. for Review, p. 1 (Docket No. 13).  In particular, Petitioner contends:

> The Administrative Law Judge made note of and considered many of her limitations and determined there was one job in the national economy that she could perform. He found that she could be a "lens inserter."  However, the Administrative Law Judge did not consider her difficulties with reaching in his evaluation.  Reaching is frequently required to do the work as a lens inserter.  As such, Ms. Hardy-Retzloff seeks review and reversal of the unfavorable decision in this matter.

*Id*. at p. 2; *see also id*. at p. 4 ("The physical function of 'reaching' was not considered, nor was it addressed by the ALJ, either in the decision or at the hearing.")  Petitioner therefore requests that the Court either reverse the ALJ's decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees.  *See* Pet. for Review, p. 2 (Docket No. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981

**MEMORANDUM DECISION AND ORDER - 2**

F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

**MEMORANDUM DECISION AND ORDER - 3**

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since December 16, 2010, the application date. (AR 17).

**MEMORANDUM DECISION AND ORDER - 4**

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: "obesity; status post hernia operations; adjustment disorder; learning disorder; carpal tunnel syndrome; post concussion syndrome; and status post knee and foot surgeries." (AR 17-18).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 18-19).

**MEMORANDUM DECISION AND ORDER - 5**

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC to "perform less than a full range of sedentary work as defined in 20 C.F.R. § 416.967(a)." (AR 19). Specifically, the ALJ determined that Petitioner has the following limitations:

> [N]o complex tasks or instructions; routine, repetitive tasks; lifting up to five pounds; standing at most 10 minutes at a time; walking at most 25 minutes at a time, then must sit five minutes before walking again; sitting a maximum of 30 minutes at a time; ability to sit and/or stand at will; only rarely bend or stoop; can turn head up to 45 degrees to the right or left but no extreme movements of the head; no driving; no rapid physical movements such as fast assembly lines or quick decision-making; no forceful gripping or grasping; and no work requiring hyper-vigilance.

(AR 19-22).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able

**MEMORANDUM DECISION AND ORDER - 6**

to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner is unable to perform any past relevant work. (AR 23-24). However, the ALJ further found that there are jobs that exist in significant numbers in the national economy that Petitioner can perform, including lens inserter. (AR 24-25). Therefore, based on Petitioner's age, education, work experience, and RFC, the ALJ concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, since December 16, 2010, the date the application was filed." (AR 25).

**B.     Analysis**

Petitioner argues in support of her Petition for Review that, when arriving upon Petitioner's RFC and associated limitations, the ALJ failed to credit her limited ability to reach – contending that such a limitation (an inability to reach) precludes the job identified by the vocational expert at the November 26, 2012 hearing (specifically, that of a lens inserter) as one she could still perform despite her impairments. *See* Brief in Supp. of Pet. for Review, p. 6 (Docket No. 13) ("It was critical error to omit the consideration of Ms. Hardy-Retzloff's limitations in reaching from the disability evaluation."). To this end, Petitioner cites to two instances in the nearly 800-page record (a January 24, 2011 "Function Report-Adult" and an April 29, 2011 "Function Report-Adult") in which *she* indicated that her impairments impact her ability to reach. (AR 213) ("reaching hurts my stomach . . . "); (AR 241) ("Reaching = Pulls on my stomach"). Thus, Petitioner's argument turns on her credibility; that is, did the ALJ (im)properly disregard Petitioner's self-assessed reaching limitation at step four of the sequential process?

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914

**MEMORANDUM DECISION AND ORDER - 7**

F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complaint. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). It should be noted, however, that to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)). Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility – at least insofar as the issue surrounding her claimed reaching limitation.

To begin, during the November 26, 2012 hearing, the ALJ (and Petitioner's counsel) specifically invited Petitioner to discuss the physical limitations affecting her ability work:

Q: What are the symptoms that have . . . kept you from working?

A: From this last hernia repair, I cannot do any repetitive lifting of five pounds.

Q: And how do you know that?

**MEMORANDUM DECISION AND ORDER - 8**

A:      Because Dr. [McKinlay] , the surgeon that did my hernia repair, wrote down things that I cannot do and when I do do them, I end up hurting really bad.

Q:      Okay. And so you – not only the doctors say don't do, but you've tried – to the extent you've tried to do more it cause pain. Is that correct?

A:      Correct, correct.

Q:      So, the most you can lift is like five pounds? Is that right?

A:      Correct.

Q:      Do you have any problems bending or stooping?

A:      Yes.

Q:      And what's your limitation there?

A:      When I bend over my stomach starts hurting. And when I stoop down I end up bending over to get up because I can't get back up.

Q:      All right. So, if you bend over or stoop your stomach hurts when you straighten up. Is that the problem?

A:      Yes, yes.

Q:      Okay. Other than the limitation on lifting and bending and stooping, any other problems you have that keep you from working?

A:      I can't stand for a certain amount of time in one place.

Q:      How long is that?

A:      Probably about 10 – I don't think it's even 10 minutes about.

Q:      So, the most you can stand at one time is 10 minutes. Is that right?

A:      Yes.

Q:      Okay, what about walking? If you're walking, is that easier for you?

A:      Yes, but I can only walk maybe three to four blocks and then I have to sit down.

**MEMORANDUM DECISION AND ORDER - 9**

| | |
|---|---|
| Q: | How long does it take you to walk three or four blocks? |
| A: | About 25 minutes. |
| Q: | Then you have to sit down and rest before you walk again? |
| A: | Yes. |
| Q: | How long do you have to sit before you walk again? |
| A: | Approximately five minutes. |
| Q: | Okay. So, sitting is your best position. Is that right? |
| A: | It's like right now I'm hurting, my leg is hurting. And my – |
| Q: | What does that have to do with sitting? How is the sitting causing your leg to hurt? |
| A: | Because of my spine. I have four herniated discs as well and it's pinching my sciatic nerve. |
| Q: | Okay. So, how long can you sit at one time? |
| A: | Fifteen minutes. |
| Q: | So, I guess your best – |
| A: | And right now I'm trying really hard to just stay sitting – |
| Q: | Okay. |
| A: | – so you can hear me. |
| Q: | Okay. If you want to stand and testify from a standing position, that's fine as long as you keep your voice loud enough for me to hear. So, I'll leave it to you if you want to stand during your testimony. But it sounds to me like then walking is your best position. Is that right? Is that a yes? |
| A: | Yes. |
| Q: | Okay. |
| A: | Yes. |

**MEMORANDUM DECISION AND ORDER - 10**

. . . .

Q: Okay. Tell me the name of the doctor that told you not to lift more than five pounds.

A: Dr. Rodney [McKinlay].

Q: Is he the one that did the last operation?

A: Yes. He's done five, your Honor.

Q: Okay. Now, did he tell you those were your limitations until you got better or those are your limitations for the rest of your life?

A: That was my limitations the rest of my life.

. . . .

Q: Okay. Do you have any problems with the way – moving your head? Like extreme motion? Do you have any problems looking up?

A: No.

Q: Okay.

A: If I bend my head side-to-side, my neck pops.

Q: Any pain associated with that popping?

A: Yes.

Q: Where's the pain?

A: Right here on the back of my neck.

Q: Okay. Right now you've got your head turned maybe about 45 degrees to your right. Is that okay or how far can you go before the neck pops and you have pain?

A: When I turn to the right.

Q: All the way to the right, 90 degrees?

**MEMORANDUM DECISION AND ORDER - 11**

A: Yes.

Q: Okay. But 45 degrees is okay.

A: Yes.

Q: And that's the same to the right or the left?

A: Correct.

Q: Okay. Any other problems moving your body or using your body?

A: Bouncing makes my stomach hurt.

Q: What makes your stomach hurt?

A: Bouncing.

Q: Bouncing?

A: Bouncing, riding –

Q: Oh, riding in a car?

A: Like riding in a truck going up a mountain.

Q: Okay. All right. All right. Anything else, ma'am?

A: I just want to state that this is not one thing that I would – I didn't want to do, but I don't know what to do.

. . . .

Q: And Dr. – in one of the most recent notes talks about carpel tunnel syndrome. Do you have any problems with holding onto small objects like silverware while you're trying to use it?

A: When I use a spoon making my goulash or gravy, my hands curl up and it hurts really bad.

Q: So, are you able to hold onto silverware while you're trying to use it though? Like when you're eating, not when you're cooking.

A: Yeah.

**MEMORANDUM DECISION AND ORDER - 12**

> Q: So, would you be able to pick up a coin off the table, like a dime, without sliding it to the edge?
>
> A: Yes.
>
> Q: How about changing out a light bulb? Could you grip a light bulb and unscrew and put a new one in?
>
> A: As long as it was in reach.
>
> Q: Okay. How about writing a short note, like a shopping list? Would you be able to do that without problems with your grip?
>
> A: Yes.
>
> Q: You mentioned that you can't play with your grandchildren. What kind of play do you do? Do you get on the floor and wrestle with them?
>
> A: No.
>
> Q: Do you play catch?
>
> A: We play fetch with our dogs.
>
> Q: So you throw items, dog brings them back?
>
> A: Yes.

(AR 40-44, 47-49, 52-53).

From this exchange, the ALJ then tried to crystallize the essence of Petitioner's testimony into a hypothetical for consideration by the impartial vocational expert, David A. Rinehart – *but only after confirming with Petitioner that the scope of limitations presented within that hypothetical was accurate:*

> Q: Mr. Rinehart, let's suppose someone has a high school level education, but has some reading comprehension problems. So, they would be limited to no complex tasks or instructions and they'd have to be routine, repetitive, tasks. Suppose the individual's limited to lifting five pounds and sit, standing, and walking as follows: could stand at most 10 minutes at a time, walking at most 25 minutes at a time, and then would have to sit five minutes before walking

**MEMORANDUM DECISION AND ORDER - 13**

> agin; sitting would be a maximum of 30 minutes at a time and would have to be able to sit or stand at will; can only rarely bend or stoop; can turn the head up to 45 degrees to the right or left, but no extreme movements of the head; can't be in a job where she'd be bouncing around like in a vehicle that's going over uneven terrain, so should be no driving; no rapid physical movements like fast assembly lines and no quick decision making; finally, no forceful gripping or grasping.
>
> Q: *All right, ma'am, I've tried to put down all the limitations I understand you've been talking about. Have I missed anything or do you think that's a fair statement of what your limitations are?*
>
> A: *Fair. It's fair.*
>
> Q: *I couldn't hear you because you're too far away from the mic.*
>
> A: *I said that sounds correct.*
>
> Q: Okay. Okay.
>
> Q: Mr. Rinehart, with those limitation, I'm thinking someone could not perform any of the claimant's prior work. Is that right?
>
> A: That's correct, your Honor.
>
> Q: And there'd be no transferrable skills.
>
> A: Not to that profile, correct.
>
> Q: There's one other thing I wanted to add is no hypervigilence.
>
> A: All right.

(AR 58-59) (emphasis added). Posed with such a hypothetical, Mr. Rinehart went on to list two unskilled jobs that could be done with the referenced limitations: (1) information clerk (light work), and (2) lens inserter (sedentary work). (AR 59-61).

At no time during the hearing did Petitioner ever indicate to the ALJ that she had any reaching limitation whatsoever (at least not beyond those already subsumed by the limitations actually communicated to the ALJ) – other than confirming her ability to change a light bulb, so

**MEMORANDUM DECISION AND ORDER - 14**

long as it was (somewhat ironically) "in reach." *See supra* (citing (AR 53)). Indeed, Petitioner unequivocally agreed with the ALJ's summation of her limitations during the November 26, 2012 hearing; limitations that the ALJ ultimately incorporated into his December 5, 2012 decision. *See supra*. An after-the-fact argument that the ALJ somehow ignored Petitioner's claimed limitations (found only in two self-assessments deep in the record and not discussed at all during the hearing) ignores the substantive admissions reflected within Petitioner's own testimony. It therefore was not improper for the ALJ to disregard Petitioner's reference to an earlier-in-time, isolated, reference to a reaching limitation in favor of her subsequent and more comprehensive testimony concerning the same.[1]

Moreover, Petitioner points to no objective medical evidence or medical opinion evidence supporting her claim that a reaching limitation impacts her ability to work. Instead, the medical record appears to reveal just the opposite. For example, medical consultant, Ward E. Dickey, M.D., reviewed Petitioner's medical records, noting that her multiple hernia operations led to certain exertional (lifting, carrying, standing, walking, sitting, pushing, and pulling), postural (climbing, balancing, stooping, kneeling, crouching, and crawling), and environmental (vibration and hazards (machinery, heights, etc.)) limitations. (AR 69-70). But, importantly, Dr. Dickey found that Petitioner had no manipulative limitations, which would including the at-issue

---

[1] In her briefing, Petitioner also claims that "[t]he vocational expert testified 'reaching' is frequently required for the job of lens inserter." Mem. in Supp. of Pet. for Review, p. 4 (Docket No. 13) (citing (AR 62)). Though this may be true in a technical sense, such testimony is important only if Petitioner finished "connecting the dots" during the November 26, 2012 hearing – namely, that Petitioner, in fact, has a reaching limitation that impacts the reaching requirement for a lens inserter occupation. That was not part of the mix, however, and because Petitioner's now-alleged reaching limitation (in whatever form that exactly means) was never discussed during the hearing, the vocational expert's passing testimony concerning reaching requirements for a lens inserter does nothing to illuminate the issues before both the ALJ at that time and this Court now.

**MEMORANDUM DECISION AND ORDER - 15**

reaching limitation. (AR 70); *see also* SSR 85-15, *available at* 1985 WL 56857, *7 (reaching identified as manipulative impairment). Dr. Dickey ultimately concluded that Petitioner retained the capacity to perform simple sedentary work, commenting:

> Your condition results in some limitations in your ability to perform work-related activities but does not prevent you from working. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information, your age, education, training, and work experience in determining how your condition affects your ability to work.

(AR 67, 74). Dr. Dickey's findings in these respects were confirmed on reconsideration by medical consultant, Robert E. Vestal, M.D., who found the same exertional, postural, and environmental limitations, but no manipulative limitations. (AR 82-84); *see also* (AR 80) ("Sedentary RFC, [claimant] is cap[able] of unskilled jobs.").[2]

Lacking any medical opinion evidence to the contrary, the ALJ properly credited these opinions and did not assess a limitation in reaching. *See Thomas*, 278 F.3d at 958-59 (credibility assessment involves testimony from physicians "concerning the nature, severity, and effect of the symptoms of which claimant complains.") (internal quotation marks and citation omitted);

---

[2] It is worth mentioning that, although giving "some weight" to the determinations of Drs. Dickey and Vestal, the ALJ nonetheless found Petitioner's exertional limitations to be *more pronounced*, stating:

> The undersigned agrees with this opinion to the extent it suggests the claimant is limited to sedentary exertional work. However, based on the claimant's combination of severe impairments and assertion and testimony, a more restrictive residual functional capacity limiting the claimant to carrying and/or lifting up to only five pounds is warranted. The undersigned has also considered and gives some weight to medical source statements prior to the claimant's current application date, which advised no driving following hernia surgery and no heaving lifting to avoid exacerbation of neck pain, which the undersigned has included in the above residual functional capacity.

(AR 22-23).

**MEMORANDUM DECISION AND ORDER - 16**

*see also* (AR 21) (ALJ concluding: "Lastly, there is no reliable medical source statement from any physician endorsing the extent of the claimant's alleged functional limitations.").

Finally, even assuming the existence of a reaching limitation, the ALJ still determined that Petitioner's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible because they conflicted with her daily activities. (AR 21) ("However, statements regarding her inability to work are not fully credible given her admitted activities of daily living."). For example, despite Petitioner's alleged inability to be gainfully employed (from the alleged reaching limitation given the arguments raised here), the ALJ pointed out that "she is able to perform multiple household chores, such as sweep, wash dishes, cook a three-course meal, do laundry, and babysit with limitations." (AR 21); *see also* (AR 18-19).[3] According to the ALJ, "[t]hese activities require similar tasks required in some jobs, which would suggest the claimant has not been completely precluded from working." (AR 21). To the ALJ, such instances show that Petitioner is not disabled to the extent claimed or she is simply not motivated to work, thus compromising the persuasiveness of her efforts to obtain disability benefits. The ALJ properly incorporated these findings in questioning Petitioner's credibility.

Combined, these reasons explain why the ALJ did not find Petitioner entirely credible. The ALJ's conclusion, while potentially at odds with another's interpretation, is nonetheless supported by substantial evidence in the record. As required by controlling law, the ALJ will not be second-guessed here. *See Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably

---

[3] During the November 26, 2012 hearing, Plaintiff confirmed that she is able to perform these chores, but that they take longer because she has to sit down from time-to-time. (AR 50-52). Petitioner did not state that she could not perform these chores (or that it took longer to perform these chores) due to an inability to reach.

**MEMORANDUM DECISION AND ORDER - 17**

drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted).

## IV.  CONCLUSION

As the fact-finder, the ALJ is soley responsible to weight and draw inferences from facts and determine credibility.  *See Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  Even if the evidence has more than one rational interpretation, if one is the ALJ's, a reviewing court may not substitute its own interpretation.  *Key*, 754 F.2d at 1549.

The evidence relied upon by the ALJ reasonably and rationally supports his well-formed conclusions.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.

## V. ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.



DATED:  **March 27, 2016**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**